Watson v. EMC Corp. No. 22-1356, and Mr. Cantor, it looks like you're ready to go. Hi, Your Honor. Thank you. Good morning. May it please the Court. My name is Glenn Cantor. I am counsel for Appellant Marie Watson, and I would like to reserve three minutes for rebuttal. I feel a little strange in that I feel as if I'm presenting arguments for the first time to this Court, because the critical arguments in this case were never addressed by the District Court. The District Court seemed to accept without deciding that surcharge was an appropriate remedy, and the District Court also seemed to accept that a breach of fiduciary duty had occurred, but then found that this was not the correct circumstance to apply surcharge. But the reasoning was never explained, and it was completely illogical, if I may explain. The District Court found that it wasn't appropriate to apply surcharge because, one, premiums had not been paid for the life coverage at issue. Well, we agree. If premiums had been paid for the life coverage, the benefits would have been paid, or we would have been pursuing med life in an A1B claim. The District Court never responded or answered the question of, well, but why weren't those premiums paid? And the answer was because Mr. and Mrs. Watson received inaccurate information from EMC. The District Court also said it's not appropriate, potentially, because the employer is not obligated under the plan to give information about how to convert the life coverage. Well, counsel, let me ask you about what the District Court did. I'm looking at the District Court order, and at the end of the order, it says that given that Mr. Watson did not pay any premiums toward a life insurance policy, the plaintiff now seeks to recover. However, the court does not find that the request for surcharge in the amount of life insurance constitutes appropriate equitable relief. Is it permissible for, in considering whether equitable relief should be ordered, is it permissible for the court, or is it within the discretion of the court, to consider that, in this instance, Mr. Watson did not maintain his coverage because he didn't convert to an individual plan or pay premiums? With due respect to the District Court, my answer would be no. It would not be appropriate because if the claim had been under A1B for benefits, it would be extraordinarily appropriate and on point that premiums weren't paid. The question here is, why weren't they paid, and were they not paid because of the actions of the employer? To get back to what I was saying is that the District Court said, well, the employer wasn't obligated to give information about conversion of the life from group to individual. And I'm not even going to contest that because the EMC could have said to Mr. Watson when he emailed and said, I want to pay my benefits. It could have said, that's not our job. Look at the plan or call MetLife. But that's not what EMC did. If the court can go to, I believe it's Appendix 117. I'm sorry, 118. He emailed and asked about his benefits. And I would also refer to Appendix 117, which is his benefit statement that lists his life insurance. And he says, I took VSP, voluntary separation, on, he says, 12-31-216. He meant 215. My pay ended on 11-24-216. How do I start paying for my benefits at the employer rate for next year? He's asking about all of his benefits. The response from EMC was not, call MetLife. We'll deal with your health, but you call MetLife. The response was, good morning. You will receive a bill from ADP, pay flex, to continue paying for your benefits. He doesn't say health benefits or vision benefits, but not life. It says, benefits remain active during the transition. And it's been stipulated by the parties that he got a bill and he and his wife paid it through his death. By the way, is there anything inaccurate about that email, though, the November 30 email? Yes. He asked about his benefits. And the response is, we're going to send you a bill for your benefits. If I can digress just for a second about the law. But they did send him a bill about his benefits, the benefits he was eligible to receive, right? No. He was eligible to receive life. If he converted. Yes. And they say, that's my point, Your Honor. They could have said and should have said, deal with us for your health. Life, look at your plan, call MetLife. They don't say that. He doesn't know that. He's a layperson. What do you do with the MetLife letter, though, that wasn't that November 29 and talks about converting from group to an individual plan? Your Honor, Marie Watson contends, and she dealt with their bill and says she never got that letter. But if I can just go to. Well, I understand that, but there is the letter. Why would it be unreasonable for the district court to infer that it was sent? By the way, it wouldn't have been sent to Mr. Watson? Yes. So she contends that she didn't have the letter, but at that point in time, it would be Mr. Watson, wouldn't it? Yes, but she advised under her appeal that she dealt with other billings. She handled these things. Just one other thing in connection with this, this reference to the ADP billing. Yes. Was there an example of one of those bills in the record? No. I thought not, but I needed to ask. I was looking for it. I know I'm counsel. I'm responsible for all of it, but I was not counsel during the appeal. I don't know why it was not in the record. I don't know why it wasn't produced by EMC other than there is a reference that EMC no longer had a relationship with ADP, so they couldn't get it. But it's not in the record, so we don't even know what that bill says. All we know is that EMC said, we will send you a bill for your benefits. They paid it, and I just want to go to the law, the well-settled law that says once an ERISA beneficiary has requested information from an ERISA fiduciary who is aware of the beneficiary's status and situation, the fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance, even if that information comprises elements about which the beneficiary has not specifically inquired. It's Hornbrook or Rissel law. The district court did assume that there was breach for purposes of its analysis, correct? She assumed there was breach, but then didn't do an analysis of the result of the breach. I understand, but it seems now you're arguing breach, but you started out with an argument that assuming breach or that there is a breach where the district court went wrong was the next step. Isn't that your argument? Yes, the district court assumed breach, but then goes off on a tangent basically saying, I'm not going to allow a breach of a fiduciary claim and a remedy because she can't pursue an A1B claim because she didn't pay premiums. Well, we know she didn't pay them, but why didn't she pay them? So are you arguing legal error? By the district court? Yes. Clear error that she didn't deal with the law that EMC, a $67 billion corporation, affirmatively accepted the obligation to provide information to Mr. Watson. The information provided was neither complete nor accurate. It could have said ADP will send you a bill for certain aspects, but for your life, you need to go to MetLife or look at your plan. It did not do so. It was silent. Counsel, I just have to stop you there. What do you want us to do? I want you to remand this case. I mean, before you answer. I'm sorry. What do you want us to do in the sense that what is missing? I mean, the thing, and you just agreed with Judge Matheson, is that the district court did assume a breach. So do you want us to remand it for a fuller explanation of the breach? That's the part I just don't want. I don't understand what you want us to do. Well, can I follow up on that question? Yes, Your Honor. I don't see that the court ever decided whether EMC actually breached a fiduciary duty. Talked about it and said that Ms. Watson's not entitled to equitable relief, even if they breached a fiduciary duty. And don't we need to have that middle question answered? Did they breach a fiduciary duty? Yes, Your Honor. And to answer Judge Ide's question, I think there are two answers. One is, Mr. Watson died in September 2017. And the maximum justice delayed is justice denied. Ms. Watson has been waiting almost seven years to get her benefits. So ideally, I would like this court to look at these facts and say, yes, there was a breach. And if there was a breach, the only appropriate remedy is surcharge. However, I realize that it's not typically the purview of this court to answer questions in the first instance. So I suppose my response to your question is to remand this case back to district court and say, you need to conduct an analysis as to whether EMC's statement to Ms. Ide, you're going to, I'm sorry, to Mr. Watson that you are going to get a bill for the benefits you're asking about and that he gets a bill which is clearly inadequate. It's not complete. It's not accurate. Is a breach of fiduciary duty. If it is, well, in that instance, even the district court said surcharge would be the remedy. There's no problem with that as a remedy. Well, the district court basically said, I kind of find a breach of fiduciary duty, but just leaves it hanging. But says, no, because they didn't pay premiums, I can't award surcharge. But once again, if they had paid premiums, it would be an A1B case. And they would have probably, it would have been paid. If you look at 183, two years later, EMC thinks this was a covered benefit. There's emails between EMC and MetLife two years after Mr. Watson's death saying, yes, it looks like it's a payable claim, and then they backtrack. So even they were confused. If the $67 billion corporation that's hiring ADP, a $12 billion annual revenue vendor, can't get this straight, how do you place the burden on these laypeople who did what they were supposed to do? They were supposed to ask. They asked the question. And once again, EMC could have said, we're not going to answer that. Read your plan or go to MetLife. They affirmatively stepped up and said, here's the answer to your question. If you're going to answer the question, answer it correctly. And if you're not going to answer it correctly, then stand up and live with the consequences. Because it's the Watsons, deceased Mr. Watson and his widow, who are bearing the burden of EMC's mistake. They're a fiduciary. They have the highest burden under the law. Would it have made any difference? I know we don't have the ADP bill. But would it have made any difference if the ADP bill had a line item on it, just kind of laying out the costs for the various benefits and there isn't one for life insurance? It could have. You're talking, I think, comparative negligence, which has no place in this in that you have a fiduciary. Now, if you're going to say that Mr. Watson should have known, potentially, but we don't know. I think one thing we can be assured of, based upon Appendix 117, where the document shows that from the day he was eligible, he purchased coverage, $663,000. He kept it all the time when he was an employee of EMC. And the record shows that Mrs. Watson said he declined coverage with his new employer because he was under the belief that he still had coverage. It is unfair. It is inequitable to allow EMC to drop the ball, to not comply with its obligations, and then make Mr. and Mrs. Watson bear that burden. They're a fiduciary. Mr. and Mrs. Watson are not. Thank you. Thank you, counsel. Appreciate your arguments. And we'll now hear from Mr. Bernstein. Thank you, and good morning. And may it please the Court. I'm Michael Bernstein from Robinson & Cole, and we represent the defendant, EMC Corp., in this matter. I think that, from the outset, I want you to understand, we believe that the district court's opinion should be upheld in all respect, and we disagree. Even its reasoning? Yes. I'll explain. Okay. Okay. Well, I disagree with Mr. Cantor's description of the response by EMC to the letter, the email that it got from the decedent. Counsel, I'm sorry. I just have to stop you there. There was no factual finding here. No. What you're telling us was not actually found. What your opposing counsel told us was not actually found. No. The court danced around the question of whether or not there was a fiduciary breach, and so she never actually got to that question. Don't we need that question answered? I don't, and here's why. Okay. Because the court made factual findings about whether or not the equitable remedy of surcharge was available, and she found that the plaintiff was ineligible for surcharge. So you don't need the breach because even if you found the breach, what her reasoning was, was that the plaintiff was ineligible because of two things, both of which are factual. And I don't think they're really in dispute either. So the first was that they didn't pay any premium for life insurance. Well, if you paid the premiums, if counsel didn't pay the premiums, you wouldn't be in this situation. You'd be under a different section. That's true, but, I mean, that is an important fact. Well, I mean, you say that's true, but that seems to me that it's a gut issue. And she found that he didn't pay the premiums. Therefore, there's no equitable relief. It doesn't make any sense. No, I think what she was saying was that they didn't pay premiums. It's not reasonable to expect that you would have coverage under those circumstances. Well, when the company said, you keep paying the bill we send, and you'll be good. So did he keep paying the bill? Yes. I think the problem there—are you done? I'm sorry. I don't want to interrupt. Go ahead. I think the problem there is we have to look at the question that was asked by the decedent. The decedent didn't just say, how do I continue my benefits? It was very specific. It said, how do I continue my benefits at the employee rate? Now, the employee rate was only available for certain types of benefits. It said so in the separation agreement. I just have to stop you again. That was not found, was it? I'm sorry? What you're seeing right now is not a factual finding that we're reviewing, is it? No. I don't think—no, it's not. Okay, well, then I guess I'm wondering how we can rely on it because there were no factual findings by the district court on the precise point you're talking about. Or am I missing that? No, I don't think that you need it. I mean, the facts are what they are. This isn't a disputed fact. I don't think that any party is saying that this isn't the email that Mr. Watson sent. I think your opposing counsel says the average person who would read this email would understand this to say, how do I continue all my benefits? You're saying what a person—or how that should be looked at is not the life insurance benefit. It wouldn't include the life insurance benefit, correct? I mean, that's where you were going. If you're basing your question and you're modifying the benefits by limiting it to the benefits that will be paid at the employee rate, then you're making a different request than all of my benefits. And, again, another fact that's not in dispute was that at the time of the email that Mr. Watson sent, the MetLife policy had already terminated. It had already lapsed. And he had already received, according to MetLife, the notice of conversion. So he could have taken steps to convert his policy, get an individual policy, and pay his premiums with MetLife. He just didn't. And I understand that. But how you describe what the district court said was the premiums weren't paid. So how do you expect to get a benefit? But the district court didn't say, oh, look at this question. A person would look at this question and know that it didn't include the life insurance. The district court didn't say that or offer that up as a rationale. I guess that's, I mean, that is true, isn't it? All of that is true. That's all correct. The way I read the decision of the district court was that the judge went straight to the question of whether surcharge was an available remedy and basically took the position, it doesn't matter whether or not there's a breach because surcharge He didn't pay the premiums. Well, because he didn't pay the premiums that he didn't convert. The district court falls off the track. It seems to be it falls off the track when you capsulize it that way. And surcharge would be appropriate, but he didn't pay the premiums. Therefore, he loses. I mean, there's something wrong in that circle. Well, I mean, you're right. I guess you're putting a lot of weight on the question of whether or not the participant, Mr. Watson, has any obligation to read his plan, has any obligation to understand. And I mean, he certainly knew enough. I'm sorry. He certainly knew enough to say that benefits would be continued at the employee rate. And the severance agreement makes very clear there's two different categories of benefits. MetLife has its own paragraph in the severance agreement. You know, the life insurance is not included with the life and vision and dental. The life and vision and dental is the only thing that could have been continued at the employee rate as was asked by Mr. Watson. Again, it's indisputable. There's no other way of reading it. This is what it says, and this is what he had in his possession. Well, counsel, are you – I can't really tell if you're making an argument about whether there was a breach on the one hand or whether the court appropriately balanced equitable considerations in coming to its ultimate decision. Because if we're just talking about the November 29 and November 30 email and whether the November 30 email was sufficient, whether it was a discharge of fiduciary duty, that seems to go to the breach question. Am I correct on that? That's correct. But – and you spend a fair amount of pages in your brief saying that there was no breach, correct? That's right. Wouldn't that be an alternative ground to affirm given that the district court never said there? Yes. All right. Yes. I mean, look – You never said it was an alternative ground to affirm, but I read it that way. No, but I think – Am I correct on that? Yes. Okay. But coming back to, I guess, a number of questions that have been posed by all three of us, once we get past the breach issue, that is, there was a breach, there wasn't a breach, but we're at the equitable remedy point and the judge says, oh, no equitable remedy because you didn't pay your premiums. The judge is talking about a remedy that comes under a different provision of ERISA than the equitable relief. Why isn't that legal error? I don't think it's legal error because she's not – I don't agree with Mr. Cantor that the question would fall under 1132A1B instead of 1132A3. Their claim is breach and it goes – that falls under A3. A claim for benefits, had they paid the premium and had they continued the policy, the chances are the claim wouldn't have been denied and there wouldn't have been a claim at all other than the payment of the claim. But getting to the equitable nature, we disagreed with the determination of the district court that surcharge was even available and we argued quite a bit in the district court that surcharge is not an appropriate remedy. And the court disagreed with us but then found that the plaintiff was ineligible. And you're arguing that now. Well, I want to make sure I get this in. I have four minutes left. I think it's important. One of the cases that we cited – actually, we cited it in the 28J letter. It was a case from September of last year from the Fourth Circuit. And it would take more time than I have to go through the string of Supreme Court cases on this issue of what does the Supreme Court mean by equitable, starting with Mertens versus Hewitt and going all the way through to Montanil. So there are like, what, seven cases? And the one thing that we know, I think, and the Rose Court, the Fourth Circuit, hit the nail on the head with this, I think, is that you're talking about a thing as opposed to just a claim against the general assets of who you're saying caused your injury. And so when you look at the Montanil decision, they did two things in Montanil, the Supreme Court, and the Rose Court acknowledged it. The first was something that the district court disagreed with us about, which was we said that when you're – in the Amara case, the Cigna versus Amara case in the Supreme Court, when they, the judges, justices, went through the potential other equitable remedies, that was dicta because it wasn't necessary to the decision, which was about whether or not you can enforce an SPD that's inconsistent with the plan. The court said no. And the second was whether or not you can reform a plan under 1132A1B, which is no. And then they said, well, if it goes back to the district court, we're going to remand it. These are some of the remedies that can be considered. And what we argued and what Justice Scalia, in his dissent to Amara, was that this is all dicta. This is unnecessary to the holding. And the district judge disagreed with us about this. And in the Fourth Circuit's decision in Rose, what you see is the court points out that there's a footnote in the Montanil decision where the court disavows the whole discussion of A3 remedies in Montanil. And the footnote basically says it wasn't important to our decisions on the merits. So what the Fourth Circuit says, we made a mistake when Amara came out and when they reversed in the McCravey versus MetLife case, another life insurance case. And they said, we're going to fix that now. Excuse me. You're aware that in the Tenth Circuit, we consider ourselves bound by Supreme Court dicta almost as firmly as by the court's outright holdings. Now, I don't know if the Fourth Circuit follows that same rule. How do you get around that? What I would say is that the Supreme Court clarified that in the Montanil decision and basically stated that the discussion of A3 remedies wasn't material to the holdings that it came to in the case. The only reason I'm mentioning the Fourth Circuit, which I recognize is only persuasive, it's not binding on this court, but it's A, a recent decision from September of last year. B, it concerns a case that the appellant relied on, the McCravey versus MetLife case, which was abrogated by the Rose decision. And it explains why, A, Amara doesn't require surcharge to be paid or even hold it as an available remedy. It was just sort of dicta in that case. That's the first thing that we get out of Montanil and the Rose case. And the second is a great discussion of what's the difference between equitable relief and legal relief and what the Rose court— And what relief? Equitable and legal relief. Because going all the way back to the Mertens decision, the Supreme Court talked about how just money damages is the quintessential form of legal relief. It's unavailable under 1132A3. But in the Rose case, that's exactly what they wanted. And that case was very sad. There was a pediatric patient who had his claim denied for surgery. And by the time it was reversed on appeal, he had passed away. Very sad. And it was denied, denied, denied. And then it was overruled. But then the court found that there wasn't—they sued to get the money that it would have cost in benefits to pay for the surgery, which had been denied. And the court said, no, we can't do that because it's not available under A3. Counsel, do you want to make a concluding— I know. I just saw that my time is up, and I apologize for that. No problem. Do you want to make a concluding statement? You've read our papers, I'm sure. And we would just say that at the end of your consideration that you went through an order affirming the district court's opinion. Thank you. Thank you, counsel. Thanks to both of you. Appreciate the arguments this morning. Case will be submitted, and counsel are excused.